24-2581 Eastern Arkansas United States v. Deonte Womack Good morning, Mr. Lowry. The court appreciates your willingness to accept the appointment under the Criminal Justice Act in this case, and you may proceed. Thank you, Your Honor. Good morning, and may it please the court. My name is Jeremy Lowry. I represent Deonte Womack in this matter. I want to open with a transcript question on page 212, and this was the question that was asked of a witness. Did he force you to have sex with men in exchange for money? The answer was yes. That witness was the 404B witness. This was the witness that's referred to as CC in the pleadings in this matter. That question was not asked of either of the witnesses for whom convictions were imposed in this case. This is a coercion to commit prostitution case. With regard to the 404B evidence, our position in this case is that this evidence was specifically and highly prejudicial in the context of this very specific fact situation. When 404B was argued in this matter, and has been argued throughout this matter, there were several comments made by the government that we believe are really salient to the underlying prejudice that applies in this particular circumstance. There's an argument made that four are better than three. In other words, this 404B evidence should be presented because this is another witness who testifies to a circumstance, and four witnesses testifying to that circumstance are better than three witnesses. There was a comment in the original argument about 404B in this case that we think our three witnesses for whom charges are being asserted are going to testify that they were forced to engage in prostitution, but we need this witness to confirm that. That's on transcript page six. The victims that resulted in a conviction may not have been asked that exact same question, but didn't they testify that they felt like they couldn't leave, that they were beaten, choked, stalked, harassed, that he controlled the money? In essence, isn't that same sort of coercion-type evidence and force evidence there from the victims? Well, Your Honor, and that comes down to sort of the crux of the factual argument in this case. There is clear evidence in this case that the two victims for which convictions were imposed were engaged in a romantic relationship with my client, with Mr. Womack. We have attempted to explain in briefing specifically that the violence that was testified to went to that romantic relationship and not to their prostitution. One of the witnesses testified that the prostitution was her choice. One of the particular violent episodes, this is AB that she testified to, involved a circumstance on her birthday in which she refused to have sex with my client and that the violence was incurred in that circumstance. She specifically testified that prostitution was her choice. With regard to the other witness, she testified that Mr. Womack has a volatile personality and that it expresses itself violently, but that it did not relate specifically to prostitution. It is that coercion causing prostitution, it's that causal element that we're saying is not, and that's why I say that question is very important, because it's that causal element that, yes, there is testimony here that if believed and if proved could constitute crimes if they were charged as those crimes, but were charged under a specific statute that says there has to be a nexus, some sort of intentional nexus between the action and the business of prostitution. And that's what we're saying is missing and why we believe the 404B evidence is so prejudicial in this situation. We cited Justice Rehnquist and Huddleston commenting that this prejudice prong of the 404B analysis is how we protect defendants from unfair prejudice in these situations. In our reply brief, we talked a little bit about the Weinstein case in which there were sort of these multifaceted relationships. And one of the things I would point out is that the witness who did not have a multifaceted relationship with Mr. Womack, that the court acquitted Mr. Womack on that count because of the lack of that causal nexus. And we believe that's even more evidence of the fact that that causal nexus isn't proved in any of these circumstances. With regard to the specific evidence that was presented, the CC witness, in addition to presenting evidence that she said, I felt I was forced into prostitution, also presented evidence that she was effectively raped as part of that being forced into prostitution. Those are awful things and we don't disagree. Those are awful things. But in the context of this prosecution, she's not a charging victim in this case. The charging victims in this case, AB said that prostitution was her choice. JG assisted in managing this business. And I want to speak just a second to the other coercion that the government argues in this case, and that is there's argument that Mr. Womack controlled the phones. Well, that argument is presented in some way to say he kept these women, not children, women, from engaging in outside communications or that sort of thing. That's not the case. These are the business phones. According to JG, all of the women had private phones and we know that they had phones because AB texted Mr. Womack. Those texts are in evidence. The business phones are in evidence. There's testimony that JG didn't live with Mr. Womack for part of the time. The other coercive arguments that the government makes in this case are generally tied to the testimony of a witness who dealt with child trafficking and that's not what this is. There's no evidence of that in this case. With regard to the government's argument, I wanted to say also in their briefing, the government argues that the testimony of CC was, quote, directly relevant to whether JG and AB's prostitution was voluntary, and that's our problem, Your Honor, and I'm out of time. Thank you. Very well. Thank you for your argument. Ms. Bryant, we'll hear from you. Thank you, Your Honor. May it please the Court. Good morning. My name is Kristen Bryant and I represent the United States. I think just coupling back off of what Mr. Lowry was stating, the proof at trial, I don't think anyone disputes that both JG and AB said they began prostitution voluntarily. The coercion and the force comes in is where AB and JG wanted to leave and the defendant would not let them leave. AB testified about three separate occasions where she wanted to leave and the defendant physically abused her. He choked her. He put a hole in her mouth. So it wasn't necessarily that he was the one who got them into prostitution and that wasn't the proof the jury heard. It's that he kept them there in the prostitution. In looking at the sufficiency argument, which was the first argument raised, Mr. Womack has waived the sufficiency argument on count two, which was the count related to Alyssa or to AB at the close of the government. Let me go back to the 404B just briefly. Yes, Your Honor. I think that Mr. Lowry was trying to sort of cabin the violence into sort of domestic, their relationship and prostitution and say the one doesn't really relate to the That's the problem. In these types of cases, and that's why Special Agent Landau testified first, was to provide a contextual framework for how a trafficker-victim relationship works. You can't separate the two and say, well, when I beat you, that's only because you're my girlfriend, not because it's involved in the trafficking relationship. As Special Agent Landau testified, oftentimes the way that traffickers recruit their victims is to tell them they're in a romantic relationship and I'm going to love you and I'm going to provide all these things for you. And then once the trafficking relationship starts as well, that's when the beating comes and that's when the force comes because they want to leave. The victims realize this is no longer a romantic relationship. This person isn't my boyfriend. This person wants me to go out and sell my body. And so now he has to start beating her. You can't divorce the relationship with the trafficking relationship. They're so intertwined with each other. Both of these women testified, I loved him. I thought we were in a relationship with each other. And so for him to say, well, I just choked you because you want to leave the romantic side of our relationship and not the prostitution side, where the proof to the jury was he had no other job and no other income but the income that these women were bringing into him. So when they're going to leave, he's losing his source of income. And so that's why you can't divorce the two from each other. And the jury certainly didn't do that. What factor under Rule 404B was this evidence? Your Honor, it went to his knowledge and his intent. Knowledge of what? Knowledge that he had to use force, fraud, or coercion to keep these women engaging in prostitution. Not to cause them to engage in it initially, but to keep them there and to keep them doing it. Because it wasn't enough that he just said, hey, I want you to keep doing this. When they started getting ready to leave, he had to use force, physical force and coercion to cause them to remain engaging in prostitution. And it was his knowledge that he had to do that. His intent to use force, fraud, or coercion wasn't just to keep them in a relationship, but it was to keep them in prostitution. And when you look at the overlapping testimony between C.C. and J.G. and A.B., they all testified that the defendant kept all the money. They all testified that he physically abused them. And they all testified that when they left or attempted to leave, he would stalk them, he would harass them, he would keep trying to get them to come back. Not to the romantic relationship, but to the trafficking relationship where he could continue to make money off of them. Was there any particular reason that you didn't ask them whether they were coerced? Because I thought that was asking for a legal conclusion. I assumed that would draw an objection if I specifically said, do you believe you were coerced into prostitution? I understand. And so, Your Honor, I would also note, if I may go back to this efficiency argument really quickly, to the waiver issue, that at the close of the government's case, defense counsel said he believed there was enough to go forward on count two, which was the A.B. count. And then at the close of the defense case, defense counsel just said, I want to renew all of my arguments. And the court said, I'll renew your arguments on count one and two. But he had never made an argument on count two. So I think that the sufficiency argument related to that has been waived. And that there was sufficient evidence on count one as relayed through J.G.'s testimony that was sufficient to go to the jury and the jury convicted Mr. Womack on counts one and on count two. And I know I still have a remainder of time. If there are no other questions, I'll sit down. Very well. Thank you for your time. Thank you, Your Honor. We'll hear rebuttal. On the waiver question, and we've addressed this in briefing, we believe the court can on sufficiency. And we've cited Federal Rule 29 criminal procedure on that issue. The court did rule on sufficiency on the second count. And we believe that's sufficient to preserve the issue, whatever counsel said. With that said, we believe this was plain error on sufficiency, even if it were not addressed. But we believe that rule is sufficient. On the legal conclusion question, counsel said this question wasn't asked because it would be a legal conclusion, but it was asked of C.C. specifically. It does go specifically to the elements of the offense. Were you forced to have sex with men in exchange for money? And in argument in briefing, the argument has been that this evidence supports whether J.G. and A.B.'s prostitution was voluntary. If that's prejudicial, if that question is prejudicial, and we believe it's highly prejudicial, asked from a third witness where the other witnesses didn't testify to that, then it's prejudicial. With regard to separating out the violence, ultimately, first of all, I'd say that's the government's responsibility. They bear the burden of proof in this case. If there's violence that can be interpreted in different contexts, then the violence has to be shown beyond a reasonable doubt to have contributed to coercion to prostitution. Our position, and we cited from the Weinstein case in New York on this just as an example of a somewhat similar circumstance, is that in a multifaceted relationship, there's got to be something. The government cited the Geddes case out of the Eighth Circuit as in the sufficiency part of this argument for the proposition that evidence of violence plus a witness testifying that she engaged in prostitution involuntarily was sufficient to meet the standards of this case. That's not what we have here. When she says leaving, it's absolutely unclear what's being left. That's the problem. The only evidence in this case that shows what's being left is that of the uncharged witness who was permitted to testify as to the ultimate issue in this case, not just intent. With that regard, under the government's argument on intent, what the government seems to be arguing is that if you have once engaged in violence for a purpose, all subsequent violence or prior And we don't believe that's the case either. But in summation, I would just say that the 404B evidence is particularly prejudicial in this case where there's no clear testimony that identifies how those issues are cabined out. And I'm out of time. Thank you, Your Honors. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course.